IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KRIN L. PARKER<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>JO ANNE B. BARNHART,<br><br>Defendant. | ORDER REMANDING FOR FINDINGS<br><br><br><br><br><br><br><br>Case No. 2:06-CV-00090 PGC |

This is an appeal from the denial of plaintiff Krin L. Parker's application for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act.[1] In particular, Ms. Parker contends that (1) the Administrative Law Judge failed to make adequate findings in support of her determination that Ms. Parker's conditions do not meet or equal any listed impairment; (2) the ALJ failed to adequately develop a full and fair record; (3) substantial evidence does not support the ALJ's assessment of Ms. Parker's residual functional capacity; and (4) the ALJ did not properly consider the opinion of the vocational expert who testified at the

---

[1] *See* 42 U.S.C. § 405(g).

hearing. The Commissioner responds that any error was harmless and that substantial evidence supports the decision that Ms. Parker is not disabled. The court agrees with Ms. Parker in part – that the ALJ erred by failing to make adequate findings at step three, specifically a finding as to whether Ms. Parker has a disability under Listing 12.04 paragraph C. The court therefore remands for a determination of whether Ms. Parker's impairments meet the listing.

## BACKGROUND

Ms. Parker asserts that she became disabled on January 1, 1999, at the age of twenty-eight, due to affective, learning, and personality disorders and back injuries sustained in an automobile accident. Ms. Parker has an extensive medical history that the court does not detail here given its ultimate conclusion that the ALJ did not make adequate findings at step three. Ms. Parker is a high school graduate with past work experience consisting of various unskilled jobs – including jobs as a construction flagger, cashier, cook ,and laborer.

On July 22, 2002, Ms Parker filed an application for benefits. The application was denied initially and upon reconsideration. Ms. Parker then requested a hearing before an ALJ. Following a hearing, the ALJ issued a decision on January 26, 2005, finding Ms. Parker was not disabled. On March 25, 2005, Ms. Parker filed a timely request for review by the Appeals Council. On November 28, 2005, the Commissioner issued a final decision denying benefits. On January 27, 2006, Ms. Parker filed the present action.

## DISCUSSION

The court reviews the Commissioner's decision to ascertain whether it is supported by substantial evidence in the record and whether correct legal standards were applied.[2] "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] The court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."[4] However, the court does not "reweigh the evidence or substitute [its] judgment for the Commissioner's."[5]

The Social Security Administration is authorized to pay disability insurance benefits to persons who have a "disability" as defined by the Social Security Act. A person is disabled only if his or her "physical or mental impairment or impairments are of such severity that he or she is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6]

---

[2] *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *see also Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

[3] *Grogan*, 399 F.3d at 1261.

[4] *Id.* at 1262.

[5] *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

[6] 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner has developed a five-step evaluation.[7] The claimant bears the burden of proof for steps one through four, and if the claimant fails to meet this burden, consideration of any subsequent steps is rendered unnecessary.[8] As the Tenth Circuit explained in *Fischer-Ross v. Barnhart*:[9]

> Step one requires a claimant to establish she is not engaged in "substantial gainful activity." Step two requires the claimant to establish she has a "medically severe impairment or combination of impairments." Step three asks whether any "medically severe impairment," alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude "substantial gainful employment." If listed, the impairment is conclusively presumed disabling. If unlisted, the claimant must establish at step four that her impairment prevents her from performing work she has previously performed. If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience.[10]

In this case, the ALJ determined that Ms. Parker had not engaged in substantial gainful activity at step one and found that she was severely impaired at step two. However, the ALJ rejected Ms. Parker's claim at steps three, four, and five. Specifically, at step three, the ALJ found Ms. Parker's impairments implicated Listings 12.04 (affective disorder), 12.05 (mental retardation), and 12.08 (personality disorder). As discussed below, however, although the ALJ made findings that Ms. Parker had not shown that she met Listing 12.04 paragraphs A and B, the ALJ did not making any specific finding as to whether Ms. Parker had shown a disability at Listing 12.04

---

[7] *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).

[8] *Williams*, 844 F.2d at 750.

[9] 431 F.3d 729 (10th Cir. 2005).

[10] *Id*. at 731 (citations omitted).

paragraph C. At step four, the ALJ concluded that Ms. Parker's limitations would not prevent her from performing her past work as a shoe packer, fast food worker, or flagger. At step five, the ALJ determined that Ms. Parker's limitations would not prevent her from performing the jobs of toll collector or parking lot attendant, which exist in significant numbers in the national economy.

Ms. Parker disputes the ALJ's conclusions at steps three, four, and five. She argues: (1) the ALJ erred in finding that Ms. Parker's condition does not meet or equal any listed impairment; (2) the ALJ failed to adequately develop a full and fair record; (3) substantial evidence does not support the ALJ's assessment of her residual functional capacity; and (4) the ALJ did not properly consider the opinion of the vocational expert who testified at the hearing. The Commissioner responds that the ALJ's did not err, that any error was harmless, and that the decision is supported by substantial evidence. The court agrees with Ms. Parker that the ALJ erred by not making specific findings at step three. Accordingly, the court remands for findings at that step.

*A. The ALJ Erred by Not Making Specific Findings Under Listing 12.04, Paragraph C.*

At step three, the ALJ found Ms. Parker's impairments implicated Listings 12.04 (affective disorder), 12.05 (mental retardation), and 12.08 (personality disorder). The ALJ determined that although Ms. Parker's impairments were severe, they were not severe enough to "meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1."[11] Ms. Parker contends, however, that her impairments meet the requirements of

---

[11] R. 17.

Listings 12.04 (affective disorder), 12.05 (mental retardation), and 12.08 (personality disorder). She further claims the ALJ did not engage in a sufficiently detailed step three analysis. Although the ALJs findings regarding Listings 12.05 and 12.08 are sufficient and supported by substantial evidence, the court agrees that the ALJ's findings regarding Listing 12.04 are inadequate.

To demonstrate mental retardation under Listing 12.05, one of the A, B, C, or D criteria must be met.[12] Paragraph A requires a "[m]ental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing)."[13] The evidence noted in the ALJ's decision indicates that Ms. Parker was capable of taking care of her personal needs, and therefore she could not be considered mentally retarded under paragraph A.

A finding of mental retardation based on the B, C, or D criteria hinges on the claimant's showing of minimum IQ scores.[14] The ALJ noted Ms. Parker's IQ scores in the medical evidence, and properly stated in her step three assessment that the scores are not low enough to implicate a finding of mental retardation under the Listing 12.05. Thus, the ALJ properly concluded that Ms. Parker's mental limitations did not satisfy the criteria of Listing 12.05.

Listings 12.08 and 12.04 essentially share two criteria sets (A and B) that will support a finding of disability.[15] As an alternative to criteria A and B, Listing 12.04 provides that

---

[12] 20 C.F.R., Part 404, Subpt. P., App. 1, § 12.05.

[13] *Id.* § 12.05(A).

[14] *See id.* § 12.05(B)-(D).

[15] *See id.* §§12.04, 12.08.

satisfaction of the criteria outlined in paragraph C will support a disability finding. The court considers each criteria in turn.[16]

Paragraph A lays out criteria that substantiate medically the presence of a particular medical disorder while paragraph B explains functional limitations that are incompatible with the ability to do any gainful activity.[17] An affective disorder substantiated under 12.04 paragraph A, or a personality disorder substantiated under 12.08 paragraph A, must result in at least two of the four functional limitations listed in paragraph B of the Listings:

    1. Marked restriction of activities of daily living; or

    2. Marked deficiencies in maintaining social functioning; or

    3. Marked deficiencies in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.[18]

The ALJ determined that Ms. Parker did not meet the B criteria since none of her impairments were more than moderate. Although the ALJ's determination is somewhat conclusory, it is ultimately supported by evidence in other portions of the record. Thus, ALJ properly concluded that Ms. Parker's limitations could not be considered severe under paragraphs A and B for Listings 12.04 and 12.08.[19]

---

[16] *See id.* § 12.04.

[17] *See id.* §§ 12.04(A)-(B), 12.08(A)-(B).

[18] *Id.* §§ 12.04(B), 12.08(B).

[19] *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (concluding that where a *Clifton* error has been committed, the "ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment").

The ALJ, however, ended her analysis of Ms. Parker's limitations at paragraphs A and B without discussing whether Ms. Parker's condition met the paragraph C criteria. Ms. Parker contends that under *Clifton v. Chater*[20] the failure to make findings requires reversal or remand.

In *Clifton,* the court remanded the case to the Commissioner where the ALJ "did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment.."[21] The court found that "[i]n the absence of ALJ finding supported by specific weighing of the evidence, we cannot assess . . . whether he applied the correct legal standards to arrive at that conclusion."[22] The court therefore "remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence at step three."[23]

Similar to *Clifton*, in this case the ALJ did not address the C criteria under Listing 12.04 and therefore the court cannot assess whether she applied the correct legal standard. The Commissioner contends, however, that any error was harmless because there is *no* evidence that to support a disability finding under paragraph C. The court disagrees.

Paragraph C is satisfied upon a showing of a:

Medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic

---

[20] 79 F.3d 1007, 1009 (10th Cir. 1996).

[21]*Id*. at 1009.

[22]*Id*.

[23]*Id*. at 1010.

> work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change of the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. [24]

In this case, the ALJ found that Ms. Parker's impairments implicate affective disorder and no more than moderate limitations. The ALJ did not specifically address whether: (1) any affective disorder has been chronic for at least two years; (2) the disorder caused more than a minimal limitation; and (3) symptoms or signs are currently attenuated by medication or psychological support. Additionally, the record contains conflicting evidence of decompensation without any finding as to whether a residual disease process has resulted in marginal adjustment.[25] For the court to conclude that Ms. Parker did not meet the criteria for this listing, it would have to "substitute [its] judgment for the Commissioner's."[26] Therefore, the court remands the case to the ALJ to make specific findings regarding Listing 12.04 paragraph C.

In remanding, the court does not conclude that the ALJ's ultimate conclusion of nondisablity is incorrect. "However, because a conclusive determination of disability at any step

---

[24] 20 C.F.R., Part 404, Subpt. P., App. 1, § 12.04(C).

[25] R. at 301, 464.

[26] *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

is dispositive regardless of the different standards involved in subsequent steps . . . [the court] cannot rely on the ALJ's finding of nondisability at step five to disregard a potentially dispositive issue favorable to the plaintiff at step three."[27]  And the court need not address Ms. Parker's claims at steps four and five.  For the sake of judicial economy, however, the court proceeds to consider Ms. Parker's remaining claims.  Aside from the step-three problem discussed above, the ALJ's decision appears supported by substantial evidence.

*B. The ALJ Properly Developed the Record.*

Ms. Parker contends that the ALJ failed to adequately develop the record because further examination by a medical expert was needed in order to assess the value of her GAF[28] scores and the cumulative effect of her moderate limitations.  Although the claimant carries the duty of proving her disability, due to the non-adversarial nature of disability benefits hearings, the ALJ is "responsible in every case 'to ensure that an adequate record is developed consistent with the issues raised.'"[29]  Even in light of this duty, the ALJ generally has "broad latitude in ordering consultative examinations."[30]  However, a consultative medical examination may be beneficial

---

[27] *McKown v. Shalala*, No. 93-7000, 1993 WL 335788, at *1 (10th Cir. August 26, 1993).

[28] "The GAF is a subjective determination based on a scale from 100 to 1 of the clinician's judgment of the individual's overall level of functioning. . . . A GAF score of 51-60 indicates moderate symptoms . . . . A GAF score of 41-50 indicates serious symptoms . . . or serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Langley v. Barnhardt*, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (quotations and citations omitted).

[29] *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (quoting *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)) (other citations omitted).

[30] *Id*. at 1166 (citations omitted).

where "there is a direct conflict in the medical evidence requiring resolution, or where the evidence in the medical record is inconclusive."[31] Otherwise, a consultative examination may be used to "explain a diagnosis already found in the record."[32] The court finds no error in the ALJ's decision not to order further consultative examinations since there was substantial evidence in the record to support her findings of Ms. Parker's mental limitations and her capacity to work.

The ALJ noted in her opinion that GAF scores (including Ms. Parker's GAF scores of 50) do not conclusively demonstrate a person's ability to work.[33] This is consistent with Tenth Circuit law. A GAF score of fifty or less does suggest an inability to keep a job.[34] Standing alone, however a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.[35] Ms. Parker underwent several psychological evaluations where her medical examiners determined that her mental limitations were moderate and consistent with a continued ability to perform light duty, unskilled work. There were no conflicting opinions of medical examiners, nor was there reason to find that the medical evidence in the record was inconclusive. Therefore, the ALJ's determination of nondisability is supported, despite Ms. Parker's contention that further consultation was needed to fully understand the

---

[31] *Id*. (citations omitted).

[32] *Id*.

[33] R. 19.

[34] *See Langley*, 373 F.3d at 1123 n.3.

[35] *See Eden v. Barnhart*, 109 Fed. Appx. 311, 314 (10th Cir. 2004) (noting that GAF score of 50 standing alone may not conclusively evidence inability to work in cases where no one who rated claimant indicated he could not work).

impact of her GAF scores.

      *C. The ALJ's RFC Decision was Supported by Substantial Evidence.*

At steps four and five, the ALJ determined that Ms. Parker retained the residual functional capacity to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy.[36] The ALJ found that Ms. Parker possessed moderate difficulties in her social and mental functioning that would prevent her from performing skilled work, as well as physical limitations that would limit Ms. Parker to performing light work. Based on her assessment of Ms. Parker's residual functional capacity and the testimony of a vocational expert at the hearing, the ALJ concluded that Ms. Parker could continue to perform some of her past relevant work as well as other work.

Ms. Parker complains that the ALJ's assessment of her residual functional capacity is not supported by substantial evidence because, first, the ALJ improperly rejected the opinions of two of Ms. Parker's examining medical professionals, Jack Araza, M.D., and John Byrne, LCSW, because she did not explicitly incorporate all their findings into her assessment of Ms. Parker's residual functional capacity. However, Ms. Parker cites no controlling law that would suggest an ALJ is required to explicitly incorporate every opinion, recommendation, or conclusion of an examiner into her assessment of a claimant's residual functional capacity. Further, the record indicates that the ALJ considered the opinions of Dr. Araza in making her disability determination.

In his evaluation of Ms. Parker, Dr. Araza concluded that she read at seventh grade level,

---

[36]*See* 20 C.F.R. § 404.1560(c).

spelled at a fifth grade level, and performed arithmetic at a sixth grade level. While not attributed to Dr. Araza, the ALJ noted and incorporated these finding in her assessment of Ms. Parker's mental limitations. Ms. Parker claims that the ALJ rejected Dr. Araza's conclusion that Ms. Parker's reading and comprehension deficits would prohibit her from doing work requiring reading and analysis. However, explicit mention of this conclusion seems unnecessary because Dr. Araza's finding is consistent with the ALJ's determination that Ms. Parker was qualified to perform only unskilled work.

Ms. Parker contends that the ALJ erred by not adequately considering her GAF scores as assessed by Dr. Araza and Mr. Byrne. However, as discussed above, the record demonstrates that the ALJ acknowledged Ms. Parker's low GAF scores, and ultimately determined that they did not conclusively prove she was unable to work. This determination is supported by substantial evidence in the record. Although Ms. Parker underwent psychological testing on several occasions, there is no instance in which a medical professional opined that she was incapable of working because of her mental limitations. Furthermore, DDS psychological examinations revealed that Ms. Parker's impairments imposed no more than moderate functional limitations, which were consistent with the performance of unskilled work. Thus, despite Ms. Parker's low GAF scores, substantial evidence from the record supports the conclusion that Ms. Parker was still able to work.

Second, Ms. Parker complains that the ALJ rejected the opinions of DDS examiners. She asserts that the DDS examiners found that Ms. Parker was actually limited in a greater number of categories than the ALJ noted in her opinion and the ALJ did not explain the reasoning behind

her assessment of Ms. Parker's mental and social limitations.  Ms. Parker suggests that because the ALJ did not list every impairment noted by a DDS examiner, the ALJ inhibited an inquiry into whether any combination of moderate impairments would preclude her from working. However, Ms. Parker does not establish a basis for such an inquiry.  In the course of her Mental Residual Functional Capacity Evaluations, Ms. Parker's evaluators determined that she retained her capacity to work.  Furthermore, the impairments the ALJ finds are those which were most clearly and consistently recognized by DDS evaluators.  Thus, this court finds substantial evidence in the record to support the ALJ's determination of Ms. Parker's residual functional capacity.

> *D.  The ALJ Properly Addressed the Vocational Expert's Testimony and Properly Relied Upon that Testimony in Making her Decision.*

During steps four and five of her analysis, the ALJ relied on the testimony of a vocational expert.  In doing so, the ALJ asked the vocational expert to identify jobs matched to the qualifications of a hypothetical person with the same mental and physical limitations the ALJ attributed to Ms. Parker.  The vocational expert determined that such a person was capable of performing Ms. Parker's past jobs of fast food worker, flagger, and shoe packer as well as the jobs of toll collector and parking lot attendant.  The court concludes that the ALJ properly addressed the testimony of the vocational expert and properly relied on that testimony in making her disability decision.

First, Ms. Parker claims that the ALJ erred because her hypothetical question did not include the cumulative effects of all of Ms. Parker's impairments; therefore, the vocational expert's testimony could not have served as a basis for determining Ms. Parker's disability status.

An ALJ is required to include in her hypothetical only "impairments and limitations that are borne out by the evidentiary record."[37] The limitations that the ALJ did rely on in framing her hypothetical are those that were most frequently and consistently noted by evaluators. Thus, the ALJ's consideration of the vocational expert's testimony, taken in conjunction evidence from the record, serves to support of her finding that Ms. Parker was capable of performing light duty, unskilled work.

Second, Ms. Parker contends that her work as a shoe packer was performed in a sheltered situation, and therefore, could not properly be considered past relevant work. Nonetheless, the other two jobs (fast food worker and flagger) were within the vocational expert's testimony the ALJ relied on. Thus, the exclusion of shoe packer as past relevant work does not impact ALJ's decision at step four.

Next, Ms. Parker claims the ALJ's definition of moderate limitations as limitations existing "up to 1/3 of the time"[38] in the context of her hypothetical was improper. However, Ms. Parker did not object to the use of the definition at the time of the hearing, nor did she suggest an alternate definition of "moderate." Therefore, this court finds no issue with the vocational expert's reliance on this definition of "moderate" in responding to the ALJ's hypothetical.

Finally, at step five, the ALJ relied on the testimony of the vocational expert in determining that Ms. Parker was qualified to perform the jobs of toll collector and parking lot attendant, which exist in significant numbers in the national economy. Ms. Parker contends that

---

[37] *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (citation omitted).

[38] R. 647.

the ALJ neglected her duty to determine the correlation between the jobs suggested by the vocational expert and the Dictionary of Occupational Titles (DOT).[39]  However, the vocational expert specifically referenced the DOT in her descriptions of the suggested positions, leaving no need for an additional inquiry on the part of the ALJ before accepting the vocational expert's testimony on the matter.  In sum, the court concludes that the ALJ properly relied on the testimony of vocational expert in finding that Ms. Parker could perform some relevant past work as well as other work and that the ALJ's determination at steps four and five appears supported by substantial evidence.

## CONCLUSION

Accordingly, the court HEREBY remands the case to the ALJ for the purpose of making specific findings at step three.  The court directs the court clerk to close this case.

SO ORDERED.

DATED this 22nd day of March, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

[39] *See Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) (holding that before relying on the testimony of a vocational expert in making a determination of nondisability, an ALJ must question how the exertional requirement of the job corresponds to the DOT and elicit a reasonable explanation for any discrepancy).